# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PHARILYN CHHANG,<br><br>Plaintiff,<br><br>v.<br><br>WEST COAST USA PROPERTIES LLC, et al.,<br><br>Defendants. | Case No.  1:23-cv-01335-SAB<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION<br><br>(ECF Nos. 49, 52, 53) |

## I.

## INTRODUCTION

On May 3, 2024, the Court issued an order ("Order") granting Defendant Housing Authority of the City of Madera's ("HACM") motion to dismiss Plaintiff's first amended complaint without leave to amend.  (ECF No. 47.)  On May 17, 2024, Plaintiff filed an "application for reconsideration of denial of leave to amend" under Rules 15, 16, and 60 of the Federal Rules of Civil Procedure and Local Rule 230(j).  The Court construes Plaintiff's application as a motion for reconsideration of its Order denying leave to amend.  (ECF No. 49.)  The Court finds this matter suitable for decision without oral argument.  See Local Rule 230(g).  For the reasons set forth herein, Plaintiff's motion for reconsideration is denied.

/ / /

/ / /

## II.

### RELEVANT BACKGROUND

On February 5, 2024, HACM filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The first amended complaint alleged Defendant Sergio Madrigal, a private landlord, failed to make reasonable accommodations and engaged in discriminatory conduct against Plaintiff.  HACM argued it was an improper party because the FAC failed to adequately allege HACM owed Plaintiff a duty to act or any statutory basis for direct liability against HACM for Madrigal's actions.  (ECF No. 32-1 at 5.)  Plaintiff argued that HACM—which did not own, operate, or manage the property or itself commit a discriminatory housing practice—was liable under the Fair Housing Act ("FHA"), Fair Employment and Housing Act ("FEHA"), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act for its "failure to intervene" to prevent Madrigal's alleged discriminatory conduct.  (FAC ¶¶ 20, 44; ECF No. 37 at 12; see also Transcript ("Tr."), ECF No. 51 at 4:16-18.)  Thus, the question before the Court was whether a PHA that administers the Section 8 program but does not otherwise own, operate, or manage the property or engage in the alleged discriminatory conduct, owes a duty to the Section 8 tenant to affirmatively take corrective action against a private owner for his alleged discriminatory acts.

The Court found the Housing Assistance Payments ("HAP") contract, Annual Contributions Contract ("ACC"), and various proffered statutes and interpreting regulations did not impose a duty on HACM to intervene in Madrigal's allegedly discriminatory conduct.  Plaintiff also failed to provide any caselaw confirming the existence of such a duty, and the Court did not independently find such support.  (See ECF No. 37 generally; Tr. 14:12-13.)  Accordingly, the Court found Plaintiff failed to assert a legal theory cognizable as a matter of law against HACM and granted HACM's motion to dismiss.

In her opposition to HACM's motion to dismiss, Plaintiff requested leave to amend to present additional factual allegations.  (ECF No. 37 at 14.)  However, Plaintiff did not offer what additional facts not already alleged in the FAC would cure her claims against HACM.  At the hearing held on April 3, 2024, the Court asked Plaintiff four times for a factual proffer to support

a finding that granting leave to amend would not be futile.[1]  In response, counsel for Plaintiff informed the Court that Plaintiff had stated facts sufficient to state a claim.  (Tr. 26:22-23; 27:11-14.)  Finding the complaint failed as a matter of law, the Court granted HACM's motion to dismiss without leave to amend.

### A.      Plaintiff's Motion for Reconsideration

On May 17, 2024, Plaintiff filed the instant motion for reconsideration of the Order denying Plaintiff an opportunity to amend her complaint.  (ECF No. 49-1.)  Plaintiff's motion "aims to augment the allegations in her first amended complaint by adding 25 supplemental allegations."  (Id. at 1-2.)  Plaintiff contends that "[e]ach propose allegation is based on information obtained by Chhang after the first amended complaint was filed, cures an ambiguity in the first amended complaint, or responds to the Court's interpretation of the first amended complaint as stated in its dismissal order."  (Id. at 2.)  Plaintiff's twenty-five proposed allegations that support Plaintiff's FHA, FEHA, ADA, and Rehabilitation Act claims against HACM are as follows:

> 1. HACM controlled material aspects of the rental relationship between Madrigal and Chhang pursuant to the terms and conditions of the Housing Assistance Payments (HAP) Contract between HACM and Sergio Madrigal:
>> This is a HAP contract between the PHA and the owner. The HAP contract is entered to provide assistance for the family under the Section 8 voucher program (see HUD program regulations at 24 Code of Federal Regulations Part 982). The HAP contract only applies to the household and contract unit specified in Part A of the HAP contract. (ECF 32-2 at 21.)
>
> 2. HACM mandated that the terms and conditions of the HAP contract between HACM and Madrigal superseded the terms and conditions of the rental contract between Chhang and Madrigal:
>> In case of any conflict between the provisions of the tenancy addendum as required by HUD, and any other provisions of the lease or any other agreement between the owner and the tenant, the requirements of the HUD-required tenancy addendum shall control.
>
> 3. HACM also forbade Madrigal from making any changes to his

---

[1] "[I]f I am to grant this, what new facts would you assert that you need an amendment?" (Tr. 26:14-15); "You do not proffer whatsoever what those facts are as to why I would give leave to amend….What are those?" (Tr. 26:18-21); "But what facts?" (Tr. 27:3); "What facts would you proffer if I was to give you leave to amend?" (Tr. 27:9-10).

rental relationship with Chhang, even if those changes were not covered in the HAP contract, unless Madrigal [a] obtained Chhang's consent, [b] reduced the change to writing, and [c] provided HACM with a copy of the written change:

> The tenant and the owner may not make any change in the tenancy addendum. However, if the tenant and the owner agree to any other changes in the lease, such changes must be in writing, and the owner must immediately give the PHA a copy of such changes. The lease, including any changes, must be in accordance with the requirements of the tenancy addendum. (ECF 32-2 at 30.)

4. HACM also required – as an express condition of its rental payments on behalf of HUD for housing Chhang – that Madrigal must treat Chhang in accordance with civil rights laws, regulations, and orders:

> [Madrigal] must not discriminate against any person because of . . .disability in connection with the HAP contract.
> . . . .
> In accordance with applicable nondiscrimination and equal opportunity laws, statutes, Executive Orders, and regulations, [Madrigal] must not discriminate against any person because of . . disability in connection with the lease. (ECF 32-2 at 23, 30.)

5. HACM also required – as an express condition of its rental payments on behalf of HUD for housing Chhang – that Madrigal must cooperate with HACM in response to a discrimination complaint by Chhang:

> [Madrigal] must cooperate with [HACM] and HUD in conducting equal opportunity compliance reviews and complaint investigations in connection with the HAP contract.

6. HACM also required – as an express condition of its rental payments on behalf of HUD for housing Chhang – that Madrigal must take corrective action to resolve discrimination complaint by Chhang:

> [Madrigal] is a breach of the HAP contract . . . [i]f [Madrigal] has violated any obligation under the HAP contract.
> . . . .
> If [HACM] determines that a breach has occurred, [HACM] . . . shall notify [Madrigal] of such determination . . . and may require [Madrigal] to take corrective action, as verified or determined by [HACM], by deadline prescribed in the notice. (ECF 32-2 at 23.)

7. HACM also mandated – as an express condition of its rental payments on behalf of HUD for housing Chhang – that Madrigal acknowledge the powers, rights, and remedies conferred on HACM under the HAP contract:

> [HACM's] rights and remedies for [Madrigal's] breach of the HAP contract include recovery of overpayments, suspension of housing assistance payments, abatement or other reduction of housing assistance payments, termination of housing assistance payments, and

termination of the HAP contract. [HACM] may seek and obtain additional relief by judicial order or action, including specific performance, other injunctive relief or order for damages.

8. But for HACM's payments to Madrigal on behalf of HUD for housing Chhang, Chhang could not have rented from Madrigal and would not have been injured by Madrigal's refusal to make a reasonable accommodation.

9. On October 21, 2022, Chhang contacted the Fair Housing Council of Central California (FHCCC), the nonprofit fair housing agency serving Fresno and Madera counties, reporting that Madrigal had violated her fair housing rights by denying her request for a reasonable accommodation. Chhang executed an authorization for the release of information to FHCCC in connection with her complaint, which FHCCC provided to HACM.

10. On October 25, Madrigal provided a letter to Chhang and HACM stating:
In response to your request to have a Pit Bull on our property as a service animal, our Insurance Carrier have informed us that if we were to accommodate this request for you, they would no longer provide coverage to us.

11. On October 25, 2022, FHCCC completed a Housing Discrimination Intake Questionnaire form, recording information related to Chhang's complaint against Madrigal. During that intake, Chhang identified HACM's Janet Moreno as a person with knowledge of Madrigal's denial of Chhang's request for a reasonable accommodation. [*screenshot omitted*]

12. Chhang personally notified HACM of her discrimination complaint against Madrigal. On November 8, Moreno recorded in HACM's Notes/Tasks log system that "Chhang had filed a claim due to discrimination."

13. Between November 2 and November 9, Madrigal issued several conflicting notices terminating Chhang's tenancy. Chhang received some of those notices; HACM received others. Chhang received a *Sixty-Day Notice of Termination of Tenancy*, dated November 5, 2022, which stated no reason for Chhang's termination. HACM received a *Thirty-Day Notice of Termination of Tenancy*, dated November 8, 2022, which stated no reason for Chhang's termination. Chhang did not receive that notice; however, Moreno emailed Chhang on November 8:
I was inform[ed] you[r] Landlord issued you a 30 Day Notice, due to a cause. I honestly don't know what the cause falls into. I offered you a transfer appointment due to the 30 day notice expiring 12/08/2022.

14. Later, also on November 8, HACM received another notice from Madrigal to Chhang, entitled, *Notice of Termination of Tenancy Due to Owner Move-in*; this notice stated, "Your current fixed term lease is not being renewed. The lease expires on

December 8, 2022." Chhang did not receive that notice.

15. The last termination notice issued by Madrigal was emailed to HACM on November 9 and received by Chhang thereafter. It was dated November 8 and entitled *Notice of Termination of Tenancy Due to Owner Move-in*. It stated, "Your current fixed term lease is not being renewed. The lease expires on February 8, 2023," which contradicts the "Initial Lease Term" on the face of the HAP contract executed by Madrigal and HACM. Christina Quijano, Madrigal's property manager, emailed a copy of that notice to Moreno and Jacqueline Velazquez, another HACM employee. Quijano's cover email stated:

> We were advised to serve her a 90 day notice. She filed a complaint with HUD, they called us and explained that we need to serve her the 90 day. We sent it out to her yesterday by certified mail. Attached is the copy of what we sent to Ms. Chhang. She will need to vacate the unit by February 8, 2023. (Emphasis omitted.)

16. Based on Madrigal's conflicting termination notices, HACM knew or should have known that Madrigal engaged in discrimination, interference or retaliation against Chhang and that the final reason for his termination of Chhang's tenancy breached an express term of the HAP contract executed by Madrigal and HACM.

17. On November 14, Moreno recorded in HACM's Notes/Tasks log system that MJ Borelli, FHCCC's executive director, had called Moreno regarding Chhang's discrimination complaint.

18. HACM voluntarily agreed and certified that it must administer its Section 8 Housing Choice Voucher (HCV) program in accordance with "HUD requirements," as set forth in the Annual Contributions Contract (HUD-53012 (ACC) executed by HUD and HACM.

> The [HACM] shall use Program Receipts to provide decent, safe, and sanitary housing for eligible families in compliance with the Act and all HUD requirements. [HACM] must comply with the following "HUD Requirements," including . . . Regulations issued by HUD at Title 24 of the Code of Federal Regulations; Other federal (including appropriations acts), executive orders and regulatory requirements. (ECF 32-2 at 5.) (Emphasis omitted.)

19. Under the ACC, HACM voluntarily agreed and certified that it "shall comply with all statutory, regulatory, and executive order requirements pertaining to civil rights, equal opportunity, and nondiscrimination, as those requirements now exist, or as they may be enacted, promulgated, or amended from time to time. These requirements include, but shall not be limited to, compliance with at least the following authorities: Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d; 24 CFR part 1); the Fair Housing Act (42 U.S.C. 3601-3619; 24 CFR part 100); section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794; 24 CFR part 8); (the

Age Discrimination Act of 1975 (42 U.S.C. 6101¬6107; 24 CFR part 146); the Americans with Disabilities Act (Pub. L. 101-336, approved July 26, 1990; 28 CFR part 35); Executive Order 11063 on Equal Opportunity in Housing (24 CFR part 107); Executive Order 11246 on Equal Employment Opportunity, as amended by Executive Order 11375 (41 CFR part 60); and Executive Order 12892 on Affirmatively Furthering Fair Housing." (ECF 32-2 at 15.) (Emphasis omitted.)

20. HACM must operate its Section 8 HCV program "in compliance with all equal opportunity requirements imposed by contract or federal law, including the authorities cited at 24 C.F.R. § 5.105(a) and title II of the Americans with Disabilities Act, 42 U.S.C. 12101 et seq." 24 C.F.R. § 982.53(a). It must certify that it "will administer the program in conformity with the Fair Housing Act, Title VI of the Civil Rights Act of 1964, section 504 of the Rehabilitation Act of 1973, and Title II of the Americans with Disabilities Act. 24 C.F.R. § 982.53(b)(1).

21. HACM must "affirmatively further fair housing in the administration of [its Section 8 HCV] program." 24 C.F.R. § 982.53(b)(2). The duty to "affirmatively further fair housing" means that HACM's administration must take "meaningful action, in addition to combating discrimination, that . . . foster inclusive communities free from barriers that restrict access to opportunity based on protected characteristics." 24 C.F.R. § 5.151. The Fair Housing Act requires landlords to make reasonable accommodations to foster the inclusion of persons with disabilities by removing barriers that restrict access to housing opportunities [*sic*] based on disability. U.S. House of Representatives, Committee on the Judiciary, Report 100-711: the Fair Housing Amendments Act of 1988 at 18, 100th Cong. (1988).

22. HACM was obligated under the ACC and civil rights laws, regulations, and orders to exercise its power under the HAP contract to take meaningful action in response to Chhang's complaint to "combat[] discrimination" and so that Chhang was not "den[ied] . . . the opportunity to participate in, or benefit from, the housing, aid, benefit, or service" pursuant to its HAP contract with Madrigal, 24 C.F.R. § 8.4(b)(1)(i); *see also* 24 C.F.R. § 8.4(b)(1)(ii), (iii), (viii).

23. Even though the ACC and HAP contract, Part B, conferred no enforceable rights on Chhang, those agreements – coupled with HACM's statutory and regulatory obligations – barred HACM from aid[ing] . . . discrimination against [Chhang] by providing significant assistance to [Madrigal who] discriminate[d] on the basis of handicap." 24 C.F.R. § 8.4(b)(1)(v). HACM provided that "significant assistance" to Madrigal's discriminatory housing practice by failing or refusing to exercise its power, right, or remedies under the HAP contract. Instead, it engaged in "action that penalize[d] or harm[ed Chhang]," facilitating her eviction from her Section 8 dwelling based on a patently invalid basis. 24 C.F.R. § 100.7(a)(2).

24. Since at least 2001, HACM has received PIH Notices issued by HUD's Office of Public and Indian Housing stating HACM's obligation to monitor compliance by dwelling owners with the terms of their HAP contracts, its obligation to enforce the HAP terms against dwelling owners, and its obligation to administer its Section 8 HCV program to affirmatively further the fair housing rights of Section 8 tenants, like Chhang.

25. On information and belief, Chhang further alleges that HACM administered its Section 8 HCV program in violation of the following relevant, regulatory requirements:

a. Failing to provide Chhang with "information on Federal, State, and local equal opportunity laws, the contact information for the Section 504 coordinator, a copy of the housing discrimination complaint form, and information on how to request a reasonable accommodation or modification (including information on requesting exception payment standards as a reasonable accommodation) under Section 504, the Fair Housing Act, and the Americans with Disabilities Act," once her voucher was ported to HACM from a Fresno public housing authority, 24 C.F.R. § 982.301(b)(10);

b. Failing to address HACM's policy in its administrative plan regarding HACM's assistance to "a family that claims that illegal discrimination has prevented the family from leasing a suitable unit," 24 C.F.R. § 982.54(d)(6); and,

c. Failing to provide Chhang "information on how to fill out and file a housing discrimination complaint" in response to her complaint against Madrigal. 24 C.F.R. § 982.304.

(Id. at 3-12.)

Plaintiff explains she believed in good faith that the FAC alleged sufficient facts to state claims against HACM under the FHA, ADA, FEHA, and Rehabilitation Act. (Id. at 13.) However, Plaintiff avers the Order draws conclusions and inferences she "could not have reasonably anticipated." (Id. at 14.) Thus, to the extent that the Court's conclusions or inferences stem from ambiguity or incompleteness in the text of the FAC, Plaintiff's proposed twenty-five allegations aim to fix the deficiencies. (Id. at 15-16.) Plaintiff concedes that the Court may ultimately determine she fails to state a claim, but requests that determination be based on an amended complaint containing the twenty-five proposed allegations. (Id. at 16.)

**B.    HACM's Opposition**

On May 31, 2024, HACM filed an opposition to Plaintiff's motion for reconsideration. (ECF No. 52.) HACM argues Plaintiff's evidence is not "new" as required for reconsideration,

given each proposed allegation was known to Plaintiff at the time she filed her opposition to HACM's motion to dismiss and prior to the April 3, 2024 hearing.  Specifically, HACM avers proposed allegations one through eight are based on the HAP contract, which Plaintiff was aware of at the time she filed the FAC, and which was relied upon in the motion to dismiss.  (Id. at 4.)  HACM further avers proposed allegations nine and eleven are based on documents obtained from the Fair Housing Council of Central California, which Plaintiff herself contacted in October 2022, well before filing the FAC. (Id.)  HACM argues proposed allegations ten and twelve through seventeen are within Plaintiff's own knowledge or based upon documents provided by HACM in its initial disclosures prior to Plaintiff's opposition to her motion to dismiss and the April 3, 2024 hearing or are simply conclusory arguments.  (Id.)  HACM points out proposed allegations eighteen through twenty-five are not facts; rather, they are either a recitation of the terms of the ACC or conclusory recitations of the law.  (Id. at 5.)

HACM also argues Plaintiff's proposed allegations would not alter the Court's ruling that HACM has no legal obligation to take affirmative action towards Madrigal.  (Id.)  HACM avers Plaintiff has therefore failed to meet her burden to show the proposed allegations are of such magnitude that this Court's ruling would have been changed.  (Id.)

### C. Plaintiff's Reply

Plaintiff contends HACM misunderstands the purpose of her motion for reconsideration. (ECF No. 53 at 3.)  Plaintiff states the Court's Order—not the twenty-five proposed allegations—is the "newly discovered" information that requires reconsideration.  (Id. at 2.) Plaintiff therefore argues its motion is proper because "[t]he clock measuring whether this motion is timely did not start to run when HACM disclosed documents after its motion; it started to run once Chhang reviewed the dismissal order."  (Id. at 5.)  Plaintiff avers reconsideration would clarify the record by providing a proffer of allegations that she could allege in response to the Order.  (Id. at 6.)

## II.

## LEGAL STANDARD

"It is a basic principle of federal practice that 'courts generally . . . refuse to reopen what

has been decided. . . ."  Magnesystems, Inc. v. Nikken, Inc., 933 F.Supp. 944, 948 (C.D. Cal. 1996) (quoting Messinger v. Anderson, 225 U.S. 436, 444 (1912)).  Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources."  Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir. 2003).  "A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in controlling law."  Marlyn Nutraceuticals, Inc., v. Mucos Pharma GmbH & Co. ("Marlyn"), 571 F.3d 873, 880 (9th Cir. 2009) (quotations and citations omitted).

"A party seeking reconsideration must show more than a disagreement with the court's decision, and recapitulation...of that which was already considered by the court in rendering its decision."  U.S. v. Westlands Water Dist., 134 F.Supp.2d 1111, 1131 (E.D. Cal. 2001).  "In the absence of new evidence or a change in the law, a party may not use a motion for reconsideration to raise arguments or present new evidence for the first time when it could reasonably have been raised earlier in the litigation."  Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California ("Cachil"), 649 F. Supp. 2d 1063, 1069 (E.D. Cal. 2009) (citing Carroll, 342 F.3d at 945).  To succeed in a motion for reconsideration, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.  See Kern-Tulare Water Dist. v. City of Bakersfield, 634 F. Supp. 646, 665 (E.D. Cal. 1986), affirmed in part and reversed in part on other grounds, 828 F.2d 514 (9th Cir. 1987).  The decision whether to grant a motion for reconsideration is within the sound discretion of the court.  Navajo Nation v. Confederated Tribes and Bands of the Yakima Nation, 331 F.3d 1041, 1046 (9th Cir. 2003).

Requests for reconsideration are also governed by Local Rule 230(j) which provides that a party seeking reconsideration must set forth the material facts and circumstances surrounding the motion for reconsideration, including "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion" and explain "why the facts or circumstances were not shown at the time of the prior motion."  E.D. Cal. L.R. 230(j)(3)-(4).

/ / /

# III.

# DISCUSSION

The Court finds reconsideration of its Order unwarranted. A Court order granting a motion to dismiss is not "newly discovered information" nor evidence upon which reconsideration *of the same order* can be triggered. The plain language of Rule 60(b) and Local Rule 230(j) requiring "newly discovered evidence" or "new or different facts or circumstances" precludes Plaintiff's clock from beginning to run only when she reads an order and realizes she could have argued differently based upon facts and evidence already in her possession. Reconsideration shall therefore be denied.

In her reply brief, Plaintiff confirms she moves for reconsideration to present arguments, legal authority, and factual allegations for the first time that could reasonably have been raised earlier:

> At the hearing on HACM's motion, the Court asked Christopher Brancart, counsel for plaintiff Pharilyn Chhang, "What facts would you proffer if I was to give you leave to amend," and Brancart answered, "I think that we stated the facts – sufficient to state the claim." (ECF 51 at 27). If that question were asked of Brancart after he had reviewed the Court's dismissal order (ECF 47), Brancart would have answered, "the facts set forth in the motion for reconsideration at pages 3-12 (ECF 49-1)."

(ECF No. 53 at 1-2.) Plaintiff does not dispute that the content within the "the facts set forth in the motion for reconsideration at pages 3-12 (ECF 49-1)" was available and could have been presented to the Court in her opposition requesting leave to amend or in response to the four times the Court requested additional information to support her claims against HACM. However, Plaintiff now assures the Court that if given a sixth opportunity to proffer additional facts[2], she would provide allegations that were known to her prior to filing her opposition. A motion for reconsideration is an improper vehicle for such request.

As noted by HACM, the Court found the FAC asserted a legal theory that is not

---

[2] The Court agrees with HACM that some of Plaintiff's proposed allegations are not facts, but summaries of contracts previously considered by the Court or statutes and interpreting regulations that were created or codified years prior to the filing of the FAC. (See ECF No. 49 (allegations 1-7; 18-25).) See Westlands Water Dist., 134 F. Supp. 2d at 1131 ("A party seeking reconsideration must show more than a disagreement with the court's decision, and recapitulation...of that which was already considered by the court in rendering its decision.")

cognizable as a matter of law against HACM.  Even if Plaintiff's motion for reconsideration was not presented as a vehicle to present evidence which should—and concededly *could*—have been previously raised, the Court notes none of the twenty-five proposed allegations state that HACM owns, operates, or manages the property or that HACM committed a discriminatory act. Amendment therefore remains futile as Plaintiff fails to assert a legal theory against HACM that is cognizable as a matter of law.

In her reply brief, Plaintiff also appears to suggest that the Court erred in failing to apply "the substantive law" to the FAC under "the appropriate standard of review under Rule 12(b)(6)."  (ECF No. 53 at 3 ("[t]he sole question is whether the dismissal order comports with those basic building blocks").)  However, Plaintiff's only argument regarding the "sole question" is that Plaintiff "could not have reasonably anticipated" the Court's "conclusions and inferences in the dismissal order."  (Id.)

In its Order, the Court discussed each contract, statute, and interpreting regulation that was argued by Plaintiff as establishing HACM's legal duty or obligation for failure to intervene. In the instant motion, Plaintiff proffers a list of "conclusions and inferences" wherein the Court noted Plaintiff failed to allege facts supporting Plaintiff's legal theory under each proffered authority.  (ECF No. 49-1 at 15-16.)  While accepting the factual allegations contained in the FAC as true and construing reasonable inferences in Plaintiff's favor, the Court concluded Plaintiff failed to support her legal theory that HACM is liable for failure to intervene in Madrigal's allegedly discriminatory acts.  Plaintiff otherwise fails to set forth facts or law of a strongly convincing nature that the Court committed clear error such that reconsideration is warranted.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

**IV.**

2

**CONCLUSION AND ORDER**

3        Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's

4   motion for reconsideration (ECF No. 49) is DENIED.

5

6   IT IS SO ORDERED.

7   Dated:   __**July 9, 2024**__                    _____

                                                     UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28