# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHARILYN CHHANG,<br><br>    Plaintiff,<br><br>    v.<br><br>WEST COAST USA PROPERTIES LLC, et al.,<br><br>    Defendants. | Case No. 1:23-cv-01335-SAB<br><br>ORDER DENYING DEFENDANT DIBUDUO & DEFENDIS INSURANCE BROKERS, LLC'S MOTION TO DISMISS<br><br>(ECF Nos. 72, 75, 79) |

Currently before the Court is Defendant Dibuduo & Defendis Insurance Brokers, LLC's motion to dismiss Plaintiff's second amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Based on the moving, opposition, and reply papers, as well as the Court's record, for the reasons explained herein, D&D's motion to dismiss is denied.

**I.**

**BACKGROUND**

Pharilyn Chhang ("Plaintiff") filed the operative second amended complaint on September 16, 2024. (Second Am. Compl. ("SAC"), ECF No. 65.) Plaintiff names the following Defendants: (1) West Coast USA Properties LLC ("West Coast"), a California limited liability company that holds title to the Cypress Apartment located at 121 Cypress Street in Madera, California; (2) Sergio Madrigal, the landlord, managing member, agent, and chief executive officer of West Coast; and (3) Dibuduo & Defendis Insurance Brokers, LLC ("D&D"), the insurance broker from which West Coast obtained its Mercury Casualty Company

("Mercury") policy to insure the Cypress Apartments. (SAC ¶¶ 5-7.)

Plaintiff and Madrigal signed a one-year lease from August 1, 2022 to July 31, 2023 to rent an apartment at the Cypress Apartments. (SAC ¶ 16.) Plaintiff told Madrigal that she lived with her emotional support pit bull terrier, Onyx, and requested an exception to the lease's rule prohibiting pets. (SAC ¶ 17.) When Madrigal refused, Plaintiff explained she was disabled, and that Onyx was necessary for her use and enjoyment of the apartment. (Id.) Madrigal told Plaintiff that the property's insurance company prohibited him from renting to a tenant with a dog of Onyx's breed, even if it was an emotional support animal ("ESA"). (Id.) Plaintiff signed the lease, moved into the apartment, and placed Onyx with friends. (SAC ¶ 18.)

On October 16, 2022, Plaintiff asked that Madrigal reconsider her request for a reasonable accommodation. (SAC ¶ 19.) Madrigal confirmed that the lease could not be modified for insurance reasons. (SAC ¶ 20.)

On October 18, 2022, Christina Quijano, Madrigal's property manager, asked D&D via email whether West Coast's insurance policies had any restrictions on allowing pit bulls on the property. (SAC ¶ 24.) Andrew Shaffer of D&D responded with a copy of what he described as Mercury Insurance's guidelines for habitational exposures, including apartments, which stated:

> The following risks are ineligible:
> 1. Tenants who own or board Akitas, Cane Corsos, Chows, Pit Bulls, Presa Canario (canary dog), Rottweilers, Staffordshire Bull Terriers, wolf hybrids, zoo animals, exotic animals, saddle animals or any animal with a biting history. Any "mixed breed" dog that has any unacceptable breed as part of the dog's lineage is unacceptable.

(SAC ¶ 25.) Shaffer also advised that knowingly allowing animals of the listed breeds could result in cancellation of West Coast's policy or denial of claims. (Id.) Plaintiff alleges, however, that the Mercury policy contained no limitation on dog breeds that could be owned by tenants residing on the property. (SAC ¶ 26.) Nor did the policy contain any cancellation provision or other penalty if West Coast allowed a tenant to keep one of the listed dog breeds. (Id.)

On October 25, 2022, Madrigal sent Plaintiff a letter denying her request for a reasonable accommodation. (SAC ¶ 27.) Madrigal advised Plaintiff that they had contacted their insurance carrier regarding Plaintiff's request to have a pit bull on the property as a service animal. (Id.)

1  Madrigal relayed that the insurance carrier informed them that if Plaintiff's request was
2  accommodated, the insurance carrier would no longer provide coverage because having a pit bull
3  on the property is too much of a risk and is therefore excluded in the policy. (Id.)

4  On October 28, 2022, Plaintiff renewed her request to Madrigal via email, stating in
5  pertinent part that denying her request for her ESA based on breed and size restrictions are
6  prohibited, including those imposed by insurance companies. (SAC ¶ 29.)

7  On November 5, 2022, Madrigal mailed a sixty-day notice to Plaintiff terminating her
8  tenancy without stating a reason. (SAC ¶ 32.) On November 8, 2022, Quijano served a new
9  notice on Plaintiff entitled, "Ninety Day Notice of Termination of Tenancy Due to Owner Move-
10 In" and a cover letter advising Plaintiff that the lease would end on February 8, 2023. (SAC ¶
11 35.) Plaintiff vacated the apartment by February 8, 2023, and she and her daughter were
12 homeless until April 25, 2023. (SAC ¶ 38.)

13 D&D filed the instant motion to dismiss each of Plaintiff's causes of action against D&D
14 pursuant to Federal Rule of Civil Procedure 12(b)(6). (Def. D&D's Mot. Dismiss ("Mot."), ECF
15 No. 72-1.) Plaintiff filed an opposition, (Pl's Opp'n Mot. ("Opp'n"), ECF No. 75), and D&D
16 filed a reply, (Def. D&D's Reply Opp'n ("Reply"), ECF No. 79.) The matter was taken under
17 submission on December 16, 2024. (ECF No. 82.)

## II.

## LEGAL STANDARD

20 Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on
21 the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A
22 motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Navarro
23 v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In deciding a motion to dismiss, "[a]ll allegations
24 of material fact are taken as true and construed in the light most favorable to the nonmoving
25 party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). The pleading
26 standard under Rule 8 does not require " 'detailed factual allegations,' but it demands more than
27 an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S.
28 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In

1  assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as
2  true.  Iqbal, 556 U.S. at 678-79.  However, "[t]hreadbare recitals of the elements of a cause of
3  action, supported by mere conclusory statements, do not suffice."  Id. at 678.  To avoid a
4  dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that
5  is plausible on its face."  Twombly, 550 U.S. at 570.

6       In deciding whether a complaint states a claim, the Ninth Circuit has found that two
7  principles apply.  First, to be entitled to the presumption of truth the allegations in the complaint
8  "may not simply recite the elements of a cause of action but must contain sufficient allegations
9  of underlying facts to give fair notice and to enable the opposing party to defend itself
10 effectively."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  Second, so that it is not unfair
11 to require the defendant to be subjected to the expenses associated with discovery and continued
12 litigation, the factual allegations of the complaint, which are taken as true, must plausibly
13 suggest an entitlement to relief.  Starr, 652 F.3d at 1216.  "Dismissal is proper only where there
14 is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable
15 legal theory."  Navarro, 250 F.3d at 732 (citing Balistreri v. Pacifica Police Dept., 901 F.2d 696,
16 699 (9th Cir. 1988)).

## III.

## DISCUSSION

### A. Plaintiff's Construed Request for Judicial Notice

20  In support of her opposition to D&D's motion, Plaintiff attaches requests for admissions
21 which she purportedly propounded to Defendants West Coast and Madrigal ("Non-Moving
22 Defendants") on November 4, 2024.  (ECF No. 75-1 at 2-5.)  The requests were propounded
23 after D&D filed the instant motion to dismiss and after the deadlines set forth in the operative
24 scheduling  order were stayed.  (See ECF No. 75.)  Plaintiff proffers that she provides the
25 propounded discovery to counter the Non-Moving Defendants' purported "empty chair defense,"
26 whereby they assert their insurance prohibited them from granting Plaintiff's request for
27 reasonable accommodation.  (Opp'n 10-11.)  The Court construes the attached propounded
28 discovery requests to the Non-Moving Defendants as a request for judicial notice.

4

D&D objects to Plaintiff's proffer arguing that the propounded discovery requests are irrelevant since they are unanswered, and consideration of such extrinsic material would convert the motion to dismiss into a motion for summary judgment. (Reply 3.) The Court agrees.

"As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.' " Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (quoting Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994)). Doing so would convert a motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(d). However, a court may take judicial notice of a fact not subject to reasonable dispute, either because the fact is generally known within the territorial jurisdiction of the trial court or because the fact is capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

The Court declines to take judicial notice or otherwise consider Plaintiff's propounded discovery requests filed in support of her opposition. The discovery requests do not contain any facts, nonetheless facts not subject to reasonable dispute. Neither are the discovery requests attached to the complaint, incorporated therein, or undisputed matters of public record. Consideration of the propounded discovery would convert the instant motion to dismiss into a motion for summary judgment. Additionally, the fact that Plaintiff recently propounded requests for admission to the Non-Moving Defendants related to their communications with D&D is not relevant to determining whether Plaintiff currently states a claim against D&D in the SAC. Accordingly, the Court denies Plaintiff's construed request for judicial notice.[1]

**B.     Federal Fair Housing Act Claim**

Plaintiff's second cause of action alleges D&D violated three provisions of the federal Fair Housing Act ("FHA"). First, Plaintiff alleges D&D violated 42 U.S.C. § 3604(a) and 24

---

[1] On January 15, 2025, Plaintiff filed a motion for permission to file a supplemental opposition. (ECF No. 83.) Therein, Plaintiff states Defendant West Coast has failed or refused to answer her requests for admission and that failure somehow bears on the instant motion to dismiss her SAC. Given the Court's denial of D&D's motion to dismiss, Plaintiff's request to provide supplemental briefing shall be denied as moot. Despite knowing leave from the Court is required to file supplemental briefing, Plaintiff filed a supplemental opposition on January 22, 2025. (ECF No. 86.) The Court shall strike Plaintiff's additional filing. The Court did not review the improper briefing in its consideration of the instant motion. Plaintiff is cautioned that future similar willful disregard of the Local Rules will result in the immediate imposition of sanctions.

C.F.R § 100.70(b), which makes it unlawful to "otherwise make unavailable or deny" a dwelling because of handicap. Plaintiff also alleges Defendant violated 42 U.S.C. § 3604(a) and 24 C.F.R § 100.70(d)(4). The United States Department of Housing and Urban Development (HUD) promulgated a list of specific activities that are covered by section 3604(a) that make housing otherwise unavailable to persons protected by the FHA. One prohibited activity is to refuse to provide property or hazard insurance for dwellings or to provide insurance differently because of handicap. 24 C.F.R. § 100.70(d)(4); see also Ojo v. Farmers Grp., Inc., 600 F.3d 1205, 1209 (9th Cir. 2010), as amended (Apr. 30, 2010) (finding 24 C.F.R. § 100.70(d)(4) is a reasonable construction of the FHA); Hous. Rts. Ctr. v. Sterling, 404 F. Supp. 2d 1179, 1190 (C.D. Cal. 2004) (noting section 3604(a) "prohibits actions that make apartments *effectively* unavailable," which includes refusing to provide insurance or providing insurance differently because of prohibited grounds pursuant to 24 C.F.R. § 100.70(d)(4)) (emphasis in original).

Courts have concluded that "refusing to provide insurance to the landlord (rather than to the tenant) can violate the FHA." Nat'l Fair Hous. All. v. Travelers Indem. Co., 261 F. Supp. 3d 20, 29 (D.D.C. 2017) (collecting cases) (noting that "[t]here is a large body of case law holding that insurers—including insurers who sell products to landlords—can be held liable under the FHA…."). " '[I]nsurance provides the financial assistance necessary to maintain a dwelling,' Nat'l Fair Hous. All., Inc. v. Prudential Ins. Co. of Am., 208 F. Supp. 2d 46, 58 (D.D.C. 2002), and thus denial of insurance has the effect of making housing 'otherwise ... unavailable,' 42 U.S.C. § 3604(a)." Travelers, 261 F. Supp. at 29. "[W]hen considering housing discrimination against disabled tenants, it does not matter whether the denial of insurance is to the landlord or the tenant: 'If, in order to rent to disabled persons, a landlord must risk losing her home through loss of ... insurance, she will be disinclined to rent to disabled persons. Such powerful disincentives to rent to disabled persons make housing unavailable to them.' " Id. (quoting Wai v. Allstate Ins. Co., 75 F. Supp. 2d 1, 6 (D.D.C. 1999).)

Additionally, Plaintiff alleges D&D violated 42 U.S.C. § 3604(c), which makes it unlawful to make or cause to be made any statement with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on a handicap, or an intention to

1 make any such preference, limitation, or discrimination. In determining whether an oral or written statement violates § 3604(c), "a plaintiff need not present evidence that the defendant harbored a discriminatory purpose. Rather, a statement violates § 3604(c) if 'an ordinary listener would believe that [it] suggests a preference, limitation, or discrimination based on a protected status.' " Ohio House, LLC v. City of Costa Mesa, 122 F.4th 1097, 1122 (9th Cir. 2024) (quoting Morris v. W. Hayden Ests. First Addition Homeowners Ass'n, 104 F.4th 1128, 1145 (9th Cir. 2024)).

Plaintiff also alleges that D&D violated section 3617, which makes is unlawful "to coerce, intimidate, threaten, or interfere with any person . . . on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [the FHA]." 42 U.S.C. § 3617. "Section 3617 reach[es] all practices which have the effect of interfering with the exercise of rights under the federal fair housing laws." Morris, 104 F.4th at 1142 (citation and quotations omitted). While section 3617 is interpreted broadly, "the 'plaintiff must show that the defendant's actions affected the 'exercise or enjoyment of ... any right granted or protected' by the FHA." Ohio House, 122 F.4th at 1124 (quoting Morris, 104 F.4th at 1143).

As an initial matter, D&D fails to address or even cite *any* of the FHA provisions or HUD regulations alleged by Plaintiff in the SAC. D&D therefore does not specifically challenge whether Plaintiff has stated cognizable claims under 42 U.S.C. § 3604(a), 42 U.S.C. § 3604(c), and/or 42 U.S.C. § 3617. Nor does D&D argue whether it, as an insurance broker, can perform the actions proscribed by 24 C.F.R. § 100.70(d)(4), as alleged by Plaintiff in the SAC. Because these issues were not raised by D&D in the instant motion, the Court does not address them. D&D instead argues that Plaintiff's claims under the FHA fail as a matter of law because D&D did not owe Plaintiff a duty of care; that the SAC establishes that D&D did nothing discriminatory; and the SAC establishes that D&D had no knowledge of Plaintiff's disability or her need for her ESA. (Mot. 4-6.)

First, D&D first avers its duties run only to its client, West Coast, and that an injured third party like Plaintiff typically has no cause of action against the at fault party's insurance broker for failing to secure insurance that would cover the injured party's claims against the

7

1 insured. (Mot. at 4-5 (citing Pac. Rim Mech. Contractors, Inc. v. Aon Risk Servs. West, Inc., 203 Cal.App.4th 1278, 1290 (2012); Bus. to Bus. Mkts., Inc. v. Zurich Specialties London Ltd., 135 Cal.App.4th 165, 172 n.4 (2005)).) D&D argues that it is merely the insurance broker that did "nothing more" than procure the requested insurance coverage sought by West Coast. (Mot. 5.)

The authorities cited by D&D do not involve FHA claims nor do they contain analogous factual circumstances. In Pacific Rim Contractors, Inc. v. Aon Risk Servs. West, Inc., the plaintiff sought to create a new duty for an insurance broker to inform it of an insurer's insolvency. 203 Cal.App.4th at 1283-84. The California Court of Appeal declined to impose such a duty because requiring broker to monitor the insurer's financial capability and notify insureds would "significantly expand and redefine a broker's role." Id. at 1287. In Business to Business Markets., Inc. v. Zurich Specialties London Limited, the California Court of Appeal held an insurance broker owed a duty of care to the plaintiff even though the parties had no direct contract, were not in privity of contract, and the plaintiff was not named in the policy. 135 Cal.App.4th at 167. The court noted, however, that the holding was limited to the particular facts and nothing in its holding suggests that "in a more typical case (e.g., an automobile accident) an injured third person has a cause of action against the at-fault party's insurance broker for failing to secure coverage that might compensate the injured party for his damages." Id. at 172 n.4. The Court finds these authorities inapposite to the instant action whereby Plaintiff alleges that D&D's own acts and/or statements—as opposed to a mere failure to secure insurance coverage that would allow for a pit bull on the property—made housing unavailable to Plaintiff or interfered with her fair housing rights. (See Opp'n 7.)

D&D argues that Plaintiff "essentially claims (somehow)" that D&D is liable merely because it owed Plaintiff, a tenant of D&D's client, a duty of care to procure an insurance policy for West Coast that covered and allowed for Onyx to live on the property. (Mot. 4.) D&D avers no such third party liability has ever been found against an insurance broker and thus Plaintiff's claims fail as a matter of law. (Id.) However, Plaintiff does not bring FHA claims against a passive third party insurance broker that did "nothing more" than secure a policy for West Coast.

8

(Mot. 5.) Instead, Plaintiff alleges that D&D, through its own acts and/or statements, violated the FHA by (1) making housing otherwise unavailable by refusing to provide insurance or providing insurance differently because of Plaintiff's handicap pursuant to 42 U.S.C. 3604(a), 24 C.F.R. § 100.70(b), and 24 C.F.R. § 100.70(d)(4); (2) making or causing to be made a statement with respect to the rental of the apartment that indicates a preference, limitation, or discrimination based on a handicap pursuant to 42 U.S.C. 3604(c); and (3) interfering with Plaintiff's exercise or enjoyment of rights granted or protected by the FHA. (Compl. ¶ 47.) Accordingly, the alleged duty owed to Plaintiff stems from D&D's own acts and/or statements which allegedly made housing unavailable to Plaintiff or interfered with her fair housing rights.

The Court is also unpersuaded by D&D's factual contentions that D&D did nothing discriminatory and that D&D had no knowledge of Plaintiff's disability or her need for her ESA. The SAC alleges that Plaintiff was informed by Madrigal on at least three occasions that her request for reasonable accommodation to allow Onyx to live with her at the apartment was denied for insurance reasons. (SAC ¶¶ 17, 20, 24.) Plaintiff further alleges that West Coast and Madrigal's agent reached out to D&D's agent to inquire "whether Defendant West Coast's insurance policies had any restrictions on allowing pit bulls on the property." (SAC ¶ 24.) D&D argues this allegation concedes D&D "did nothing discriminatory" because D&D had no knowledge of Plaintiff, no knowledge of her situation, and no knowledge of her request for accommodation. (Mot. 5; Reply 2.) The Court agrees that this allegation alone fails to state a claim for discrimination on the basis of Plaintiff's disability under the FHA.

However, Plaintiff also alleges that in response to the Non-Moving Defendant's inquiry, D&D's agent provided the Non-Moving Defendants with a purported copy of Mercury's guidelines for habitational exposures which listed pit bulls as "ineligible risks" and further advised the Non-Moving Defendants that allowing certain breeds of animals could result in cancellation of the policy or denial of claims. (SAC ¶ 25.) Plaintiff alleges that the Mercury policy does not in fact contain a limitation on the breed of dog that could be owned by tenants, nor does it contain any cancellation provision if West Coast allowed a tenant to keep one of the purportedly banned dog breeds on the property. (SAC ¶ 28.) Plaintiff further alleges she

9

1 received a letter from Madrigal which informed her, in pertinent part, that:

> We have contacted our Insurance Carrier and our Attorney to hopefully come up with a solution to accommodate your needs. In response to your request to have a Pit Bull on our property as a service animal, our Insurance Carrier have [sic] informed us that if we were to accommodate this request for you, they would no longer provide coverage to us. Our insurance provider stated that having a Pit Bull on the property is too much of a risk, therefore excluded in our policy.

(SAC ¶ 27.)

D&D does not address these additional allegations in its briefing. Instead, D&D generally counters the SAC by vehemently disputing that Plaintiff, her disability, or her requests for reasonable accommodation were ever presented or mentioned to D&D. However, a motion to dismiss is not the appropriate vehicle to dispute the facts alleged in the SAC. D&D's contention that it had no knowledge of either Plaintiff's disability or requests for a reasonable accommodation is a factual challenge that cannot be considered by the Court on a motion to dismiss. See Lee, 250 F.3d at 688 ("Factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6).").

Instead, the Court must accept Plaintiff's allegations regarding the October 25, 2022 letter from Madrigal to Plaintiff as true. Accepting the statements contained within and making a reasonable inference that the "Insurance Carrier" that informed Madrigal that pit bulls were a prohibited breed is D&D since the Mercury policy is silent on the topic (Opp'n 8), D&D allegedly had knowledge that Plaintiff "request[ed] to have a Pit Bull on [the] property *as a service animal.*" (SAC ¶ 27 (emphasis added).) Further, the SAC sufficiently alleges that if West Coast granted Plaintiff's request for reasonable accommodation to allow her ESA to live on the property, D&D allegedly informed the Non-Moving Defendants that Mercury would no longer provide insurance coverage. (Id.) Plaintiff sufficiently alleges, however, that the Mercury policy does *not* contain a limitation on the breed of dog, nor does it contain any such cancellation provision. (SAC ¶ 28.) Thus, after being informed of Plaintiff's request for a reasonable accommodation to have a pit bull on the property as an ESA, Plaintiff alleges D&D made a statement to the Non-Moving Defendants that the Mercury policy would be cancelled or

provided differently.  D&D's statements allegedly influenced Madrigal's denial of Plaintiff's request for a reasonable accommodation.  Whether D&D actually had knowledge of Plaintiff's request, her disability, her ESA, or made a discriminatory statement based upon her disability are factual disputes that cannot be determined by this Court on a motion to dismiss.

The Court finds Plaintiff sufficiently alleges that D&D had knowledge of Plaintiff, her ESA, and her request for accommodation when it allegedly made the statement to the Non-Moving Defendants, as relayed to Plaintiff in the October 25, 2022 letter. The Court is unpersuaded that D&D did not create a duty it owed to Plaintiff under the broad scope of the FHA by its own alleged actions and/or statements.  Hous. Rights Ctr. v. Donald Sterling Corp., 274 F.Supp.2d 1129, 1137 (C.D. Cal. 2003) (noting the FHA should be "interpreted broadly to effectuate its purposes.").  Accordingly, D&D's motion to dismiss Plaintiff's FHA claim is denied.

### C. California Fair Employment and Housing Act Claim

Plaintiff's fourth cause of action alleges D&D violated the California Fair Employment and Housing Act ("FEHA").  Specifically, Plaintiff alleges D&D is liable under the FEHA for (a) making a statement, with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on disability or an intention to make any such preference, limitation, or discrimination pursuant to Cal. Govt. Code §§ 12955(d), 12927, 2 Cal. Code Regs. §§ 12050, 12185(d); (b) making unavailable a dwelling based on discrimination because of disability pursuant to Cal. Govt. Code §§ 12955(k), 12927; 2 Cal. Code Regs. § 12185(d); (c) refusing to provide property or hazard insurance for dwellings or providing such insurance differently because of disability pursuant to Cal. Govt. Code §§ 12955(e), 12927, 2 Cal. Code Regs. §§ 12005(n), 12185(d); (d) aiding, abetting, or inciting the commission of a discriminatory housing practice pursuant to Cal. Govt. Code §§ 12955(g), 12927, 2 Cal. Code Regs. § 12185(d); and (e) interfering with the exercise or enjoyment of state fair housing rights pursuant to Cal. Govt. Code §§ 12955.7, 12927.

"In federal court, the standards for FHA and FEHA housing discrimination causes of action are the generally same." Mengistu v. Forestview Apartments, LLC, No. 2:19-cv-05118

ODW JCX, 2022 WL 2159257, at *4 (C.D. Cal. June 15, 2022) (citing Walker v. City of Lakewood, 272 F.3d 1114, 1131 n.8 (9th Cir. 2001)); see also Iniestra v. Cliff Warren Invs., Inc., 886 F. Supp. 2d 1161, 1169 (C.D. Cal. 2012) ("Because FEHA is based on the Fair Housing Act, liability under the Fair Housing Act also supports liability under FEHA."). "FEHA provides equivalent, if not greater protections for victims of discrimination." Pack v. Fort Washington II, 689 F. Supp. 2d 1237, 1247 (E.D. Cal. 2009).

Relevant to the instant motion, California Government Code § 12955(g) prohibits any person from "aid[ing], abet[ting], incit[ing], compel[ling], or coerc[ing] the doing of any of the acts or practices declared unlawful in FEHA, or to attempt to do so." Cal. Govt. Code § 12955(g). "The FEHA does not provide a definition of 'aiding and abetting,' " Fiol v. Doellstedt, 50 Cal. App. 4th 1318, 1325 (1996), but it is a concept "closely allied" with conspiracy. Janken v. GM Hughes Elecs., 46 Cal. App. 4th 55, 78 (1996). "Aiding and abetting requires not agreement, but simply assistance." Id.

Similar to its argument related to the FHA claims, D&D only argues Plaintiff's FEHA claims for disability discrimination and/or aiding and abetting discrimination fail because D&D did not have knowledge of Plaintiff's disability and her need for her ESA. (Mot. 5.) D&D avers all it did was simply respond to the specific question that it was asked by Quijano by informing her that West Coast's insurance policy did not cover pit bulls. (Mot. 6.) D&D argues that Plaintiff's claims against D&D under the FEHA fail as a matter of law because the SAC establishes D&D did not know of Plaintiff or her purported disability and D&D did not discriminate against Plaintiff or refuse to grant her an accommodation.

As previously discussed, the Court finds the SAC sufficiently alleges D&D had knowledge of Plaintiff and her request for reasonable accommodation. Accepting the allegations related to Madrigal's October 25, 2022 letter to Plaintiff as true, the SAC alleges that Quijano contacted D&D to assist the Non-Moving Defendants "come up with a solution to accommodate" Plaintiff. (SAC ¶ 27.) The Court finds the SAC sufficiently alleges that the Non-Moving Defendants advised D&D of Plaintiff's "request to have a Pit Bull on [the] property as a service animal." (Id.) Thus, D&D allegedly had knowledge of Plaintiff, her ESA, and her

request for reasonable accommodation. D&D's factual challenge to Plaintiff's FEHA claim regarding its knowledge that Plaintiff was a disabled person, that Onyx was an ESA, or whether the Non-Moving Defendants ever asked if the policy specifically contained exceptions for disabled persons and/or ESAs have no bearing on the legal sufficiency of the allegations contained within the SAC under Rule 12(b)(6). Accordingly, D&D's motion to dismiss Plaintiff's FEHA claim against D&D is denied.

## IV.

## CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendant Dibuduo & Defendis Insurance Brokers, LLC's motion to dismiss (ECF No. 32-1) is DENIED;

2. Plaintiff's motion for permission to supplement her opposition (ECF No. 83) is DENIED as moot and the supplemental opposition subsequently filed without leave from the Court is STRICKEN (ECF No. 86);

3. Defendant Dibuduo & Defendis Insurance Brokers, LLC shall file a responsive pleading **no later than fourteen (14) days** after the date of entry of this order; and

4. The deadlines contained within the current scheduling order (ECF No. 57) remain STAYED until the **March 6, 2025** scheduling conference.

IT IS SO ORDERED.

Dated:  **February 11, 2025**

STANLEY A. BOONE
United States Magistrate Judge

13