# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHARILYN CHHANG,<br><br>Plaintiff,<br><br>v.<br><br>WEST COAST USA PROPERTIES LLC, et al.,<br><br>Defendants. | Case No.  1:23-cv-01335-SAB<br><br>ORDER DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS WEST COAST USA PROPERTIES LLC AND SERGIO MADRIGAL'S MOTION FOR SUMMARY JUDGMENT<br><br>ORDER GRANTING DEFENDANT DIBUDUO & DEFENDIS INSURANCE BROKERS LLC'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 121, 122, 145) |

## I.

## INTRODUCTION

Pending before the Court are cross-motions for summary judgment by Plaintiff Pharilyn Chhang, Defendants West Coast USA Properties LLC ("West Coast") and Sergio Madrigal ("Mr. Madrigal"), and Defendant Dibuduo & Defendis Insurance Brokers LLC ("D&D").[1]  The Court heard oral argument on December 17, 2025.  Counsel Liza Cristol-Deman appeared on behalf of Plaintiff, counsel James Peel appeared on behalf of Defendants West Coast and Mr.

---

[1] This case proceeds before the undersigned pursuant to 28 U.S.C. § 636(c) for all purposes, pursuant to the consent of all parties.  (ECF Nos. 28, 77.)

Madrigal, and counsel Mark Szyntar appeared on behalf of Defendant D&D.  Having considered the parties' papers, the evidence proffered, the arguments presented at the December 17, 2025 hearing, as well as the Court's file, the Court issues the following order DENYING Plaintiff's partial motion for summary judgment, DENYING Defendants West Coast and Mr. Madrigal's motion for summary judgment, and GRANTING Defendant D&D's motion for summary judgment for the reasons set forth below.

## II.

### RELEVANT BACKGROUND

On September 24, 2024, Plaintiff filed the operative second amended complaint against Defendants West Coast, Mr. Madrigal, and D&D, alleging causes of action under the Fair Housing Act (FHA), 42 U.S.C. § 3601 et seq.; California Fair Employment and Housing Act (FEHA), Cal. Govt. Code §§ 12927, 12955 et seq.; wrongful eviction; invasion of private right to occupancy; and breach of duty.  (ECF No. 65.)  On October 31, 2025, the parties filed cross-motions for summary judgment and partial summary judgment.  (ECF Nos. 121-124.)[2]  The parties filed their respective oppositions on November 21, 2025 (ECF Nos. 130, 131, 133, 135), and the parties replied on December 3, 2025.  (ECF Nos. 137-139.)  The Court heard oral arguments on December 17, 2025.

## III.

### LEGAL STANDARD

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that may affect the outcome of the case under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

---

[2] Plaintiff subsequently filed two notices of errata, revising tables and correcting citations.  (See ECF Nos. 129, 145.)

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (cleaned up). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets that burden, the burden then shifts to the non-moving party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 588. Rather, the nonmoving party must "identify with reasonable particularity the evidence that precludes summary judgment." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Instead, the court must view the evidence in the light most favorable to the non-moving party, drawing all justifiable inferences in that party's favor. AXIS Reinsurance Co. v. Northrop Grumman Corp., 975 F.3d 840, 844 (9th Cir. 2020). When resolving cross-motions for summary judgment, the court has an "independent duty to review each cross-motion and its supporting evidence . . . to determine whether that evidence demonstrates a genuine issue of material fact." Fair Hous. Council of Riverside Cnty, Inc. v. Riverside Two, 249 F.3d 1132, 1137 (9th Cir. 2001). Therefore, each motion is evaluated separately, "giving the nonmoving party in each instance the benefit of all reasonable inferences." Lenz v. Universal Music Corp., 815 F.3d 1145, 1150 (9th Cir. 2016) (citation omitted).

/ / /

/ / /

/ / /

## IV.

## EVIDENTIARY OBJECTIONS AND JUDICIAL NOTICE

The Court has reviewed each of the evidentiary objections submitted by the parties and the responses thereto.  (ECF Nos. 130-134, 137, 140-141.)  Many of the objections are based on hearsay and relevance.

"[A]t the summary judgment stage, we do not focus on the admissibility of the evidence's form.  We instead focus on the admissibility of its contents."  Sandoval v. Cnty. of San Diego, 985 F.3d 657, 666 (9th Cir. 2021).  That is, though such objections could prove cognizable at trial, only the admissibility of the relevant facts at trial, not the form of these facts as presented in the motion, matters for the purposes of a motion for summary judgment.  See id.  Where "the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document—the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment."  Id. (citations omitted).  In ruling on a motion for summary judgment, a district court must address evidentiary objections only to the extent they are material to its ruling.  Norse v. City of Santa Cruz, 629 F.3d 966, 973 (9th Cir. 2010).  Further, a court "cannot rely on irrelevant facts, and thus relevance objections are redundant."  Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).

Accordingly, to the extent that the Court relied on facts supported by evidence to which objections for hearsay or relevance were raised, those objections are OVERRULED.  Likewise, the Court OVERRULES D&D's objection to Plaintiff's reply evidence authenticating a medical record.  The Court need not rule on evidentiary objections of expert opinions Robert S. Griswold and Kevin J. Valine because it did not consider that evidence.

With respect to judicial notice, a court may take judicial notice of facts that are "not subject to reasonable dispute" because they are "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Defendants West Coast and Mr. Madrigal request judicial notice of the fact that dogs are commonly referred to as "man's best friend" and that "multiple studies have illustrated

4

the many ways people's dogs can provide comfort, calm frazzled nerves, be good listeners, and provide other forms of valuable support to the population in general." (ECF No. 134.) The Court declines to take judicial notice of these assertions.

**V.**

**DISCUSSION**

Plaintiff moves for partial summary judgment in her favor on the liability of Defendants West Coast and Mr. Madrigal under the Fair Housing Act ("FHA"), the California Fair Employment and Housing Act ("FEHA"), and wrongful eviction. Plaintiff also seeks partial summary judgment in her favor on the liability of D&D under the FHA and the FEHA. In turn, West Coast and Mr. Madrigal move for summary judgment in their favor on all five claims addressed in the complaint, and D&D moves for summary judgment in its favor on the two claims. The Court will address each claim in turn.

**A. Plaintiff's Claims Against D&D**

1. <u>Facts</u>

D&D is a California licensed insurance broker. (ECF No. 132, Fact 1.) D&D procured a policy from Mercury Casualty Company on behalf of West Coast which provided coverage for apartments owned and managed by West Coast. (<u>Id.</u>, Fact 2.) On October 18, 2022, West Coast contacted D&D, its insurance broker, to inquire whether its insurance policy prohibited pit bulls. (ECF No. 126, Fact 115.) West Coast did not mention that the pit bull was an emotional support animal or that a tenant had a disability. (<u>Id.</u>, Fact 135.) Forty minutes later, D&D responded that, "[West Coast's] insurance policy would not provide coverage as a landlord if there were to be something that happens with the dog, AND knowingly allowing animals of the listed breeds could result in cancellation of the policy, or the denial of claims based on misrepresentation of how the apartments are run." (<u>Id.</u>, Fact 116; ECF No. 124, Ex. 14.) D&D attached one page of an untitled document listing "ineligible risks," which included pit bulls and various other breeds of dogs. (<u>Id.</u>) D&D added that it was an "industry standard exclusion/guideline," and that "we would likely not be able to find coverage with a carrier that provided similar pricing or coverage." (<u>Id.</u>) West Coast sent written correspondence to Plaintiff and denied her

5

accommodation request on October 25, 2022.  (ECF No. 132, Fact 20.)  On November 1, 2022, West Coast emailed D&D with the headline "Cypress Apt., Madera – Service Animal Request." (ECF No. 122-4, Ex. E; ECF No. 124, Ex. 22.)  The email included West Coast's letter to Plaintiff formally denying her accommodation, stating that it had contacted its insurance carrier and attorney.  (Id.)

### 2. Parties' Positions

Plaintiff alleges that D&D is liable for violating the FHA and FEHA because D&D failed to take prompt, corrective action against West Coast upon learning of her disability-related need for an emotional support animal.  Additionally, Plaintiff argues that D&D is liable for aiding and abetting West Coast's decision to deny her accommodation request.  (ECF No. 145, pp. 33-36.)

D&D claims that it did not violate the FHA or the FEHA because it could not transact insurance business in California as an insurer.  (ECF No. 122, pp. 5-7.)  D&D further asserts that it had no knowledge of Plaintiff, her alleged disability, or any request for accommodation, and that it did not advise or assist West Coast in denying such a request.  (ECF No. 130, pp. 6-10; ECF No. 137, pp. 6-10.)

### 3. Analysis

#### a. *Failing to Take Prompt Action*

FHA regulations provide that an individual or entity is directly liable for "failing to take prompt action to correct and end a discriminatory housing practice by a third-party, where the [individual or entity] knew or should have known of the discriminatory conduct and had the power to correct it."  24 C.F.R. § 100.7(a)(1)(iii).  "The power to take prompt action to correct and end a discriminatory housing practice by a third-party depends upon the extent of the [individual's or entity's] control or any other legal responsibility the person may have with respect to the conduct of such third-party."  Id.  FEHA regulations are similar.  2 C.C.R. § 12010 (a)(1)(C).  "In federal court, the standards for FHA and FEHA housing discrimination causes of action are the generally same."  Mengistu v. Forestview Apartments, LLC, No. 2:19-cv-05118-ODW-JCX, 2022 WL 2159257, at *4 (C.D. Cal. June 15, 2022) (citing Walker v. City of Lakewood, 272 F.3d 1114, 1131 n.8 (9th Cir. 2001)).

The record reflects that D&D did not know or have reason to know about Plaintiff's alleged disability or her accommodation request until November 1, 2022. By that date, West Coast had already denied Plaintiff's accommodation request, stating that it had contacted its *insurance carrier* and its attorney. Plaintiff presents no evidence that D&D, as an insurance broker, had control or power to take corrective actions against West Coast. D&D's involvement consisted of providing insurance related information and later receiving a copy of the denial. That conduct does not, without more, establish direct liability under 24 C.F.R. § 100.7(a)(1)(iii) or 2 C.C.R. § 12010(a)(1)(C). Accordingly, Plaintiff's motion is DENIED, and D&D's motion is GRANTED with respect to this claim.

b. *Aiding and Abetting*

California Government Code section 12955(g) prohibits "aid[ing], abet[ting], incit[ing], compel[ling], or coerc[ing] the doing of any of the acts or practices declared unlawful in FEHA, or to attempt to do so." Cal. Govt. Code § 12955(g). "The FEHA does not provide a definition of 'aiding and abetting,'" Fiol v. Doellstedt, 50 Cal. App. 4th 1318, 1325 (1996), but it is a concept "closely allied" with conspiracy. Janken v. GM Hughes Elecs., 46 Cal. App. 4th 55, 78 (1996).

As discussed above, D&D's involvement was limited to providing insurance related information. At the time it responded to West Coast's inquiry about whether its insurance policy prohibited pit bulls, D&D was unaware of Plaintiff's alleged disability or accommodation request. Plaintiff has produced no evidence that D&D assisted, encouraged, or otherwise participated in the denial of her accommodation. Therefore, there is no basis to conclude that D&D aided or abetted any unlawful act under FEHA. Accordingly, Plaintiff's motion for summary judgment is DENIED, and D&D's motion for summary judgment on this claim is GRANTED.

c. *Remaining Claims Against D&D under the FHA and FEHA*

In addition to the claims addressed above, D&D moves for summary judgment on the remaining FHA and FEHA claims alleged in the complaint. D&D argues that Plaintiff's causes of action for violations of the FHA and FEHA fail as a matter of law because there are no facts

showing that D&D denied or otherwise made a dwelling unavailable to Plaintiff.  (ECF No. 122.) Specifically, D&D contends that it lacked the capacity to engage in prohibited acts under the FHA because it is not an insurer and therefore could not issue, deny, or refuse insurance in any capacity.  (Id.)  In opposition, Plaintiff argues that because D&D's conduct affected the rental of housing, D&D is liable under the FHA and FEHA.  (ECF No. 131.)

The Court examines the following remaining alleged violations against D&D: 1) making a dwelling unavailable based on disability discrimination; 2) refusing to provide property or hazard insurance for dwellings, or providing such insurance differently because of disability; 3) making statements, with respect to the rental of a dwelling, that indicate any preference, limitation, or discrimination based on disability, or an intention to make any such preference, limitation, or discrimination; and 4) interfering with the exercise or enjoyment of state fair housing rights.  (ECF No. 65.)

Because FEHA largely mirrors its federal counterpart, liability under the FHA would also support liability under the FEHA.  See, e.g., Auburn Wood I Homeowners Ass'n v. Fair Emp. and Hous. Comm'n, 121 Cal. App. 4th 1578, 1591 (2004).  Accordingly, the Court conducts its analysis under the FHA and does not separately reexamine the claims under the FEHA.  See SoCal Recovery, LLC v. City of Costa Mesa, 56 F.4th 802, 811 (9th Cir. 2023) ("Federal courts analyze FEHA claims under the same standard as FHA claims.").

i.    Making Unavailable a Dwelling and Providing Insurance Differently

The FHA provides that it is unlawful to "otherwise make unavailable or deny" a dwelling because of race, color, religion, sex, familial status, or national origin.  42 U.S.C. § 3604(a).  The United States Department of Housing and Urban Development ("HUD") makes clear that this prohibition also extends to practices that make housing unavailable because of handicap.  24 C.F.R. § 100.70(b).  Additionally, HUD promulgated a list of specific activities that are covered by section 3604(a) that make housing otherwise unavailable to persons protected by the FHA.  One prohibited activity is to refuse to provide property or hazard insurance for dwellings or to provide insurance differently because of handicap.  24 C.F.R. § 100.70(d)(4); see also Ojo v. Farmers Grp., Inc., 600 F.3d 1205, 1209 (9th Cir. 2010) (finding 24 C.F.R. § 100.70(d)(4) is a

reasonable construction of the FHA); Hous. Rts. Ctr. v. Sterline, 404 F. Supp. 2d 1179, 1190 (C.D. Cal. 2004) (noting section 3604(a) "prohibits actions that make apartments effectively unavailable," which includes refusing to provide insurance or provide insurance differently because of prohibited grounds pursuant to 24 C.F.R. § 100.70(d)(4)).

The facts establish that D&D is a licensed insurance *broker*, not an insurer.  Therefore, D&D could not issue, deny, or refuse insurance in any capacity, nevertheless provide insurance differently on the basis of disability.  D&D merely communicated general insurance related information to West Coast without knowledge of Plaintiff's alleged disability or accommodation request.  Therefore, summary judgment is appropriate as to Plaintiff's claims under 42 U.S.C. § 3604(a).

ii.      Making a Statement

It is unlawful under the FHA "[t]o make, print, publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the . . . rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . handicap . . . , or an intention to make any such preference, limitation, or discrimination."  42 U.S.C. § 3604(c).  The Ninth Circuit has adopted an "objective ordinary reader" standard for determining whether a statement violates § 3604(c).  Ohio House, LLC v. City of Costa Mesa, 122 F.4th 645, 669 (9th Cir. 2025) (quoting Morris v. W. Hayden Ests. First Addition Homeowners Ass'n, 104 F.4th 1128, 1148 (9th Cir. 2024)).  Thus, a "plaintiff must prove that 'an ordinary listener would believe that the challenged statement suggests a preference, limitation, or discrimination based on a protected status." Id. (citation omitted).

Here, the statement at issue is D&D's email to West Coast, which stated that "[West Coast's] insurance policy would not provide coverage as a landlord if there were to be something that happens with the dog, AND knowingly allowing animals of the listed breeds could result in cancellation of the policy, or the denial of claims based on misrepresentation of how the apartments are run . . . [t]his is an industry standard exclusion/guideline, and we would likely not be able to find coverage with a carrier that provided similar pricing or coverage."  On its face, the statement communicates information about insurance coverage and the potential

consequences of allowing certain dog breeds under the policy. An ordinary reader would understand the statement as conveying information about insurance risk, not as expressing a discriminatory preference or limitation based on handicap. Even if the statement were later factored into a housing decision, section 3604(c) focuses on the content of the statement itself, not its downstream effects. Because the statement does not, under an objective reading, indicate a preference, limitation, or discrimination based on handicap, Plaintiff cannot establish a violation of section 3604(c). Accordingly, there is no genuine dispute of material fact, and D&D is entitled to summary judgment as to this claim.

   iii. Interference

Section 3617 states that it is unlawful to "coerce, intimidate, threaten, or interfere with any person . . . on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [the FHA]." 42 U.S.C. § 3617. "Section 3617 reach[es] all practices which have the effect of interfering with the exercise of rights under the federal fair housing laws." Morris, 104 F.4th at 1142 (citation and quotations omitted). While section 3617 is interpreted broadly, "the plaintiff must show that the defendant's actions affected the 'exercise or enjoyment of . . . any right granted or protected' by the FHA." Ohio House, 122 F.4th at 1124 (quoting Morris, 104 F.4th at 1143.) In addition, the plaintiff must prove that a defendant interfered with protected activity because of discriminatory intent or motive. See Morris, 104 F.4th at 1143-44.

As discussed above, at the time D&D responded to West Coast's inquiry about whether its insurance policy prohibited pit bulls, D&D was unaware of Plaintiff's alleged disability or accommodation request. D&D's communication consisted of providing insurance information in response to a general inquiry, and Plaintiff has not presented evidence from which a reasonable jury could conclude that D&D interfered with the exercise of FHA rights *because of* discriminatory intent or motive. Accordingly, D&D's motion for summary judgment on this claim is GRANTED.

In sum, the Court finds there is no genuine dispute of material fact regarding whether D&D violated the FHA and FEHA. Accordingly, the Court GRANTS D&D's motion for

summary judgment, and DENIES Plaintiff's partial motion for summary judgment against D&D.

**B. Plaintiff's Claims Against West Coast and Mr. Madrigal**

1. Facts

West Coast is a California limited liability company that owns the subject rental property, 117-121 Cypress Street in Madera, a 14-unit complex. (ECF No. 134, Fact 93.) In total, West Coast owns approximately 103 residential rental units and does not use outside management companies. (Id., Fact 94.) Mr. Madrigal is the owner, managing member, and "boss" at West Coast. (Id., Fact 92.)

Plaintiff received a Housing Choice Voucher from the Housing Authority of the City of Madera ("HACM"). (ECF No. 126, Fact 114.) Plaintiff and Mr. Madrigal signed a one-year lease running from August 1, 2022 to July 31, 2023. (ECF No. 133, Fact 1.) When Plaintiff signed the lease, she met with West Coast office/property manager Christina Quijano. (Id., Fact 2.) At that time, Plaintiff asked if she could keep her emotional support animal ("ESA") named Onyx in her unit. (Id.) Ms. Quijano stated that she would speak with Mr. Madrigal about it, wrote "no pets" on the application, and gave Plaintiff the keys to the apartment. (Id.)

Shortly after signing the lease, Plaintiff and Mr. Madrigal communicated by phone and text. (ECF No. 134, Fact 20.) Plaintiff informed him that she had a dog and identified it as an ESA. (Id.) Mr. Madrigal inquired about dog's breed, and Plaintiff replied that Onyx was a pit bull. (Id.) Mr. Madrigal then informed Plaintiff that she could not keep the dog because of his insurance. (ECF No. 124, Ex. 3, Sergio Madrigal Deposition at 93:16-20.) On October 16, 2022, Plaintiff texted Mr. Madrigal asking if he would reconsider her request for an ESA. (Id., Ex. 10.) Plaintiff wrote that her depression had gotten worse without him, she needed him, and that she had a signed letter from a doctor to prove her conditions. (Id.) In response, Mr. Madrigal replied, "Sorry we cannot modify the lease… [p]lease search for an apartment that will accommodate." (Id.) Plaintiff responded by text that she would email Mr. Madrigal her doctor's letter. (Id.) Mr. Madrigal texted back, "Please include pictures of the dog and breed. But please keep in mind you cannot have the dog there." (Id.)

On October 17, 2022, Plaintiff both emailed and mailed a letter to West Coast, requesting

an accommodation and attaching her physician's verification letter.  (ECF No. 134, Fact 30; ECF No. 124, Ex. 11.)  On October 18, 2022, Plaintiff also texted Madrigal a PDF version of her physician's verification letter.  (Id., Fact 31; Id., Ex. 10.)  Mr. Madrigal responded to Plaintiff via text: "We're [sic] going to also include pictures of the dog and the breed?  Please text me pictures of the dog and [l]et me know what breed it is."  (Id., Fact 32; Id.)  Plaintiff responded with two photos of Onyx and said, "American Pit bull Terrier."  (Id.; Id.)

On October 18, 2022, at Mr. Madrigal's direction, Ms. Quijano emailed Andrew Shaffer, an insurance broker employed at D&D, asking if the insurance covering West Coast's rental properties restricted pit bulls.  (ECF No. 134, Fact 34; ECF No. 124, Ex. 13.)  Ms. Quijano did not mention that the dog was an ESA or that the tenant had a disability.  (Id.; Id.)  Forty minutes later, D&D responded that, "[West Coast's] insurance policy would not provide coverage as a landlord if there were to be something that happens with the dog, AND knowingly allowing animals of the listed breeds could result in cancellation of the policy, or the denial of claims based on misrepresentation of how the apartments are run."  (ECF No. 126, Fact 116; Id., Ex. 14.)  D&D attached one page of an untitled document listing "ineligible risks," which included pit bulls and various other breeds of dogs.  (Id.)  D&D added that it was an "industry standard exclusion/guideline," and that "we would likely not be able to find coverage with a carrier that provided similar pricing or coverage."  (Id.)

On October 25, 2022, West Coast sent written correspondence to Plaintiff and denied her accommodation request, stating that its insurance carrier informed them that they would lose coverage if they allowed a pit bull on the property, and that pit bulls were excluded from the policy.  (ECF No. 134, Fact 60; ECF No. 124, Ex. 15.)  Ms. Quijano emailed the letter to Plaintiff on October 26, 2022, copying Mr. Madrigal.  (Id, Fact 63; Id., Ex. 15.)  Three days later, on October 28, 2022, Plaintiff emailed Ms. Quijano and Mr. Madrigal, informing them that they could not deny her animal based on stereotypes, that even breed restrictions imposed by insurance were not permitted, and that she would file a complaint with HUD.  (Id, Fact 64; Id., Ex. 16.)  Plaintiff included a photo of Onyx sitting on grass surrounded by a group of teenage girls petting him.  (Id.)

One week later, on November 2, 2022, Ms. Quijano emailed Plaintiff at Mr. Madrigal's request, stating, "[w]e are doing our best to accommodate your request…for the service animal", and asked for proof of renter's insurance, vaccines and registry, and proof of therapy training. (Id., Fact. 68; ECF No. 124, Ex. 17.)  That same day, Plaintiff responded that ESAs do not require renter's insurance, registry, or specific training, and attached Onyx's City of Madera dog license and proof of vaccinations.  (Id., Fact. 69; Id., Ex. 17.)  The license for Onyx listed Plaintiff's apartment as the location where Onyx was kept.  (ECF No. 133, Fact 19.)

On November 5, 2022, West Coast served a 60-day notice terminating her tenancy.  (Id., Fact. 70; ECF No. 124, Ex. 19.)  Three days later, on November 8, 2022, West Coast served a 30-day notice and posted it on her door.  (Id., Fact. 71; Id., Ex. 20.)  Under the terms the Housing Assistance Payment contract signed by Mr. Madrigal, Plaintiff's lease could only be terminated for specific reasons.  (Id., Fact. 73.)  Also on November 8, 2022, West Coast received a phone call stating that the 60-day notice was improper and that a 90-day notice could be issued. (Id., Fact. 74.)  West Coast believed the caller to be Plaintiff's HUD case worker at HACM.  (Id., Fact. 75.)  In response, Ms. Quijano prepared a letter to Plaintiff on behalf of West Coast advising her of the call and attaching a new, 90-day notice terminating her tenancy.  (Id., Fact 76; ECF No. 124, Ex. 21.)  The letter and notice were dated November 8, 2022, and stated, "during this time you will be allowed to have your service animal."  (Id; Id.)  The 90-day notice was titled, "Notice of Termination of Tenancy due to Owner Move-in" and checked a box for "non-renewal of a fixed term lease."  (Id., Fact 77; Id.)  Plaintiff move-out of her unit on February 8, 2023.  (ECF No. 124, Ex. 1 Chhang Deposition 46:9-23.)

West Coast executed a lease for the unit to Mr. Madrigal's son and wife, with a term commencing the day after Plaintiff vacated.  (ECF No. 134, Fact 89.)  Mr. Madrigal's son never moved into the unit.  (Id., Fact 90.)

2. Parties' Positions

Plaintiff argues Defendants West Coast and Mr. Madrigal are liable for violating five discriminatory housing practices under both the FHA and FEHA: (1) denying a reasonable accommodation in violation of 42 U.S.C. § 3604(f)(3)(b); (2) otherwise making housing

unavailable because of handicap in violation of 42 U.S.C. § 3604(f)(1); (3) applying different terms, conditions, and privileges because of handicap in violation of 42 U.S.C. § 3604(f)(2); making a facially discriminatory statement in violation of 42 U.S.C. § 3604(c); and interfering with or retaliating against any person in the exercise or enjoyment of any of the rights protected by the FHA in violation of 42 U.S.C. § 3617.  (ECF No. 145, p. 17-31.)  Additionally, Plaintiff argues that West Coast and Mr. Madrigal are liable for wrongfully evicting Plaintiff under both common law and California Civil Code § 1942.5.  (Id. at pp. 31-33.)

Defendants assert that Plaintiff as a matter of law has failed to prove that she had a disability, that her disability affected a major life activity, or that Defendants would not suffer an undue hardship or expense or alter its business practices by granting her accommodation request.  (ECF No. 121.)  Defendants further argue that Plaintiff's eviction was proper because her lease was terminated because of the "no pets" provision in the lease agreement, that the accommodation would have created an undue burden, and that no-fault termination was proper under California Civil Code section 1946.2.  (Id.)

3. Analysis

a. *FHA Claims*

The Court first addresses whether Plaintiff has established that she is handicap within the meaning of the FHA.  Each of the statutory provisions on which Plaintiff relies prohibits discrimination "because of handicap."  See 42 U.S.C. § 3604.  Accordingly, whether Plaintiff has a handicap is a threshold issue for her FHA claims.

The FHA defines "handicap" as: (1) "a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h). Under the FHA, a "physical or mental impairment" is any mental or psychological disorder, including emotional or mental illness. 24 C.F.R. § 100.201(a)(2). "Major life activities" means functions that are of central importance to daily life, such as caring for one's self, performing manual tasks, speaking, breathing, and working. 24 C.F.R. § 100.201(b). "The term 'substantially limits' suggests that the limitation is 'significant' or 'to a large degree.'" Joint

Statement of the Department of Housing and Urban Development and the Department of Justice, Reasonable Accommodations under the Fair Housing Act, HUD (May 17, 2004), https://www.hud.gov/sites/documents/huddojstatement.pdf.

Reviewing the record, the Court finds there is a triable issue of fact as to whether Plaintiff is handicapped within the meaning of the FHA.  Plaintiff attests that she suffers from and was diagnosed with depression, anxiety, and post-traumatic stress disorder ("PTSD").  (ECF No. 124, Ex. 34, Pharilyn Chhang Decl., ¶ 2; Id., Ex. 1, Pharilyn Chhang Depo., 22:24-25; 23:1-7; ECF No. 124, Exs. 31, 35.)  Plaintiff submits a letter from her physician stating that these conditions cause "certain limitations" with respect to social interactions, coping with stress, and anxiety. (ECF No. 124, Ex. 11; Pharilyn Chhang Decl., ¶ 2.)  She further testified that she experiences difficulty sleeping and engaging in social interactions as a result of these conditions.  (ECF No. 127, Pharilyn Chhang Decl., ¶ 3; Chhang Depo. 90:6-7.)

At the same time, the record provides limited detail regarding the nature and extent of Plaintiff's alleged limitations.  The physician's letter does not specify the degree to which Plaintiff is limited because of her conditions.  (See ECF No. 124, Ex. 11.)  The progress notes and letter from her therapist similarly do not describe how her conditions affect her daily life. (See id. Exs. 31, 25.)  Additionally, Plaintiff has not provided information regarding the frequency, duration, or intensity of her impairments.

The Court finds that a genuine dispute of material fact exists regarding whether Plaintiff is handicapped.  Accordingly, the Court does address Plaintiff's claims under the FHA.

b. *FEHA Claims*

The threshold question in a FEHA action is whether the plaintiff's mental disability "limits a major life activity."  Cal. Govt. Code § 12926(j)(1).  The term "mental disability" includes emotional or mental illnesses.  Id.  "Major life activities" are broadly construed and include social activities.  Id. § 12926(j)(1)(C).  A limitation of a major life activity occurs "if it makes the achievement of the major life activity difficult."  Id. § 12926(j)(1)(B).

As stated above, Plaintiff declared that she has difficulty sleeping and finds it challenging to interact with people socially.  She supports these claims with a letter from her physician

stating that her conditions cause "certain limitations" with respect to social interactions, coping with stress, and anxiety. However, the parties dispute whether the physician's letter reflects the physician's own independent evaluation or is based primarily on information provided by Plaintiff's therapist. Plaintiff states that her therapist wrote a letter for her to take to her physician. (See ECF No. 124, Ex. 34, Pharilyn Chhang Decl., ¶¶ 8-9; Id., Ex. 35.) The physician's letter states that he is familiar with Plaintiff's medical history regarding "Neck Pain, Headache, Back Ache, Stomach Pain, Cough [,] and Allergic Rhinitis", but then discusses Plaintiff's mental illnesses and associated limitations.

Accordingly, because a genuine dispute of material fact exists as to whether Plaintiff is limited in major life activities because of her mental disabilities, neither party is entitled to summary judgment with respect to claims under the FEHA.

c. *Wrongful Eviction*

Plaintiff's motion for summary judgment asserts that West Coast and Mr. Madrigal are liable for wrongfully evicting Plaintiff under both common law and California Civil Code Section 1942.5. (ECF No. 145, pp. 24-26.) The Court observes, however, that Plaintiff's complaint limits its wrongful eviction claims to California Civil Code sections 1927 and 1940.2.[3] (See ECF No. 65, pp. 17-18.) Accordingly, the Court declines to address these new theories on summary judgment. See La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest, 624 F.3d 1083, 1089 (9th Cir. 2010) (holding that a plaintiff may not raise a new legal theory on a motion for summary judgment).

Defendants' motion for summary judgment asserts that Plaintiff violated the lease's "no pets" provision and that her requested accommodation would have created an undue burden. (ECF No. 121, p. 12.) However, because there is a genuine dispute of material fact as to whether Plaintiff is disabled or handicapped, the Court cannot determine whether as a matter of law Defendants denied a reasonable accommodation.

Defendants also argue that eviction was proper as a no-fault termination under California

---

[3] The Court notes that while Plaintiff's notice of her motion states that she is moving for wrongful eviction under California Civil Code section 1940.2, her motion itself states and applies "common law."

Civil Code section 1946.2 because Mr. Madrigal's son qualifies as a close relative under the statute. (Id.) California Civil Code section 1946.2 applies to "tenants who have continuously and lawfully occupied a residential real property for 12 months[.]" Here, it is undisputed that Plaintiff and Mr. Madrigal entered into a one-year lease running from August 1, 2022 to July 31, 2023, and that Plaintiff moved out of her unit on February 8, 2023. Accordingly, because Plaintiff occupied her unit for less than 12 months, California Civil Code section 1946.2 does not apply. Defendants' motion for summary judgment is therefore DENIED.

In sum, the Court has carefully reviewed the record, briefs, and parties' arguments in this matter and finds genuine disputes of material fact related to each parties' claims that cannot be resolved on summary judgment. Accordingly, the Court DENIES both Plaintiff's and Defendants West Coast and Mr. Madrigal's motion for summary judgment.

## VI.

## CONCLUSION AND ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant Dibuduo & Defendis Insurance Brokers, LLC's motion for summary judgment (ECF No. 122) is GRANTED;

2. Plaintiff's partial motion for summary judgment (ECF Nos. 123, 145) is DENIED;

3. Defendants West Coast Properties LLC and Sergio Madrigal's motion for summary judgment (ECF No. 121) is DENIED; and

4. The Clerk of the Court is DIRECTED to enter judgment in favor of Dibuduo & Defendis Insurance Brokers, LLC, and against Plaintiff Pharilyn Chhang.

IT IS SO ORDERED.

Dated:   **March 20, 2026**

STANLEY A. BOONE
United States Magistrate Judge

17